### KENNEY v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. November 21, 1918.)

No. 3192.

1. CRIMINAL LAW ⬅448(2)—CONCLUSIONS—FALSE ACCOUNTS BY POSTMASTER.
    On trial of a postmaster for presenting a false account in reporting excessive postage cancellations, testimony of an inspector, from examination of the records of many offices of the same class, as to the ratio of sales of stamps to cancellations, and also that there were no industrial plants in defendant's town likely to receive stamps from other places, and his testimony from the records of defendant's office as to the relation of sales to cancellations before his incumbency, *held* not incompetent as conclusions.

2. CRIMINAL LAW ⬅322—EVIDENCE—PUBLIC RECORDS.
    The records of a public office, as a post office, are presumptively correct.

In Error to the District Court of the United States for the Eastern District of Texas; Gordon Russell, Judge.

Criminal prosecution by the United States against James Kenney. Judgment of conviction, and defendant brings error. Affirmed.

J. Q. Mahaffey, John J. King, and W. L. Estes, all of Texarkana, Tex., for plaintiff in error.

Clarence Merritt, U. S. Atty., of McKinney, Tex., and J. B. Dailey, Asst. U. S. Atty., of Beaumont, Tex.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. The plaintiff in error was tried and convicted of a violation of section 206 of the Penal Code of the United States (Act March 4, 1909, c. 321, 35 Stat. 1128 [Comp. St. 1916, § 10376]). The first count of the indictment, under which alone he was convicted, charged him with having made a false account, while postmaster at Nash, Tex., in the prosecution of his business as such postmaster, to the Auditor for the Post Office Department, in which he claimed that during the period from April 1, 1916, to June 30, 1916, he canceled $258.10 in stamps, when, in fact, he had canceled a substantially less amount, and that he had made the false account for the purpose of increasing his compensation as postmaster. It was proven that the defendant below was postmaster at Nash during the period stated, and, as such postmaster, had made the report of cancellations of postage in the amount alleged for that period. The disputed questions were whether he had canceled as great an amount of postage as he had reported, and, if not, whether he had reported a greater amount with the fraudulent intent of increasing his compensation as postmaster. Fourth-class postmasters are compensated according to the amount of cancellations of postage. Their compensation increases with their cancellations, under the law by which it is fixed.

The assignments of error relied upon by the plaintiff in error are based on rulings of the District Judge admitting evidence objected to by him, and the denial of requested charges and exceptions taken to the court's oral charge.

[1] The first assignment of error is based on the action of the court in permitting the post office inspector, a witness for the government, to testify:

"That there are no plants or other things being operated there [at Nash], from investigation, as far as he could ascertain, whereby they would send stamps from other places to these local plants."

The ground of objection was that it was a conclusion, and not testimony of a fact. The witness had testified that at fourth-class post offices, generally, sales of stamps exceeded cancellations, and that this was always true, in his experience, unless there were plants at the places which procured their postage from post offices located elsewhere than where the plant was, instancing sawmills and factories, whose home offices, located elsewhere, supplied the mill or branch office with postage. The witness testified that he had been in Nash three days, and had investigated the kind of business done there. He was qualified to testify, as a fact, and not as a conclusion, that he had found in Nash no industries of the kind he described (mills and branch houses), which were likely to be supplied with postage from an office other than that at Nash. The weight of his evidence might be affected by his limited opportunity, but this would not render it inadmissible.

The second and eighth assignments of error are both based on the action of the court below in permitting the same witness to testify:

That "in the ordinary course of business of fourth-class post offices, the sales of postage exceed the cancellation of postage, and that such is the case in about 98 per cent. of the fourth-class post offices."

The witness had testified that he had investigated about 1,000 fourth-class post offices, and had noted the comparison between cancellations and sales, in his investigations, and gave that as the result of his experience. We think the evidence was competent. It was not hearsay, since it was the result of the witness' personal examinations of the books and records of the offices he had examined, and not of statements made to him by the various postmasters of those offices. For the same reason, the defendant was not denied the privilege, accorded him by the Constitution, of being confronted by the witnesses against him. The fourth-class postmasters were in no sense the witnesses who furnished the testimony. It came from the mouth of the inspector, testifying from the records of the various post offices.

Nor do we think it was either practicable or legally necessary to have produced the records of the various offices his examinations covered. The records of a public office are presumed to be correct. His testimony related to a course of business among fourth-class post offices, and such a course of business could be established by a witness familiar with the conduct of the business, whether his familiarity came from his being engaged in the business himself or from supervising those who were. A bank examiner, as well as a banker, is competent to testify to a banking usage or course of business. If the inquiry had been confined to a single office, and had not been as to the course of business of fourth-class offices generally, production of the records of the single office and of the postmaster who kept them, might have been required. The fact that sales would normally exceed cancellations, unless stamps were procured by patrons from other offices, is so obvious as to require no proof. This is all that the testimony of the inspector amounted to. He excluded from the rule offices where stamps were accustomed to be procured by patrons at other offices than the office of cancellation. The percentage of such offices was unimportant. The important fact was whether Nash was an office of that kind.

[2] The third assignment of error is based on the ruling of the court below in permitting the post office inspector to testify from the records of the post office at Nash at a time prior to the defendant's incumbency as to the relation between sales and cancellations in that office. The records of the office were produced and identified by the defendant, and delivery of them to the inspector made by the defendant. This was a sufficient identification of them as records of the Nash office for the period they purported to cover. The books themselves were introduced in evidence. The only ground of objection was that the defendant was not in charge of the office when they were made, and their correctness had not been established. Being the records of a public office, they were presumptively correct. They were material to furnish a basis of comparison between the office in the respect involved before and during the defendant's incumbency as postmaster.

The fourth assignment of error is based on the ruling of the court below in permitting the government to introduce in evidence "15

envelopes containing mail matter addressed to the Nash post office, on which there were marks showing postage to be due on each of them." The ground of objection was that the evidence was immaterial and irrelevant, and related to a different offense than that for which the defendant was being tried. The defendant, on cross-examination and without objection from his counsel, identified the envelopes, and testified that they did not bear canceled due stamps, and did contain a notation of due postage, and that they were received at the Nash post office while he was postmaster, and were delivered by him to the cashier of the bank to which they were addressed, and that he either failed to collect the due postage from the addressee, or, if he collected it, failed to place due stamps on the letters, but did place the amounts collected in the postal funds of the office. The envelopes do not appear in the record. They are described as being "15 envelopes last referred to, on each of which was a notation that postage from 2 to 10 cents was due, but on which there were no overdue stamps."

The defendant, without objection on his part, had already testified to the fact that the 15 envelopes which had been received by him and delivered to the addressee had a notation of postage due on each, and had no overdue stamps on them. Clearly the introduction of the envelopes themselves added nothing to his voluntary recital of their contents. Nor would the defendant be permitted, after giving his version of their contents, without interposing any objection to the inquiries, to object to the introduction of the envelopes, if they conflicted with his version. There was, however, no conflict between the envelopes introduced by the government over defendant's objection and his verbal description of them, made without the interposition of any objection from him. As the plaintiff in error could have suffered no injury from the introduction of the envelopes, after voluntarily testifying to their contents, we find it unnecessary to determine whether their admission was erroneous.

The fifth and sixth assignments of error are based on the refusal of the trial court to give requested instructions on the law of circumstantial evidence and reasonable doubt. The District Judge declined to grant the requests, because their subject-matter had, in his opinion, been fully covered in the oral charge. We agree with the trial judge's conclusion in this respect.

The seventh assignment of error is based on an exception to that part of the court's oral charge defining reasonable doubt. We find no error in the definition, and think the court below fairly and fully instructed the jury upon this matter. The exception did not direct the court's attention to any specific defect in the definition.

As we are of the opinion that there is no prejudicial error in the record, the judgment of the District Court is affirmed.